1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF CALIFORNIA

7   TIYEONDREA MCGLOTHIN,                )   1:08cv1290 LJO GSA
    ABSALOM MASON, ZEPHYARIAH            )
8   MASON; MALIA MASAON by next of       )
    friend TIYEONDREA MCGLOTHIN; and     )
9   JANETTA SCONIERS,                    )   FINDINGS AND RECOMMENDATION
                                         )   REGARDING DISMISSAL OF ACTION
10              Plaintiffs,              )
                                         )   ORDER DENYING MOTION TO APPOINT
11      v.                               )   COUNSEL
                                         )
12  MARIO SANTOS, et al.,                )
                                         )   (Document 3)
13                                       )
                                         )
14              Defendants.              )
    _____)

15

16                          **INTRODUCTION**

17          Plaintiffs Tiyeondrea McGlothin and Janetta Sconiers ("Plaintiffs"), appearing pro se and

18  proceeding in forma pauperis, filed the instant complaint on September 2, 2008.[1]  This 201 page

19  complaint is rambling and difficult to understand.  Plaintiffs allege numerous causes of action

20  based upon Plaintiff McGlothin's eviction from low income housing located at 1603 West

21  Orleans Avenue, Fresno CA 93706.  (hereinafter, "the premises" or "the residence").  The

22

23  ───────────────

24          [1] Absalom Mason, Zephyariah Mason, and Malia Mason are listed as additional Plaintiffs by their next of
    friend, Plaintiff Tiyeondrea McGlothin.  These Plaintiffs are the minor children of Tiyeondrea McGlothin.  They are
25  not properly named Plaintiffs since Plaintiff McGlothin  may not be their guardian et litem/next of friend in this
    action.  Although a non-attorney may appear *in propria persona* in his or her own behalf, that privilege is personal to
    him [or her].  McShane v. United States, 366 F.2d 286, 288 (9TH Cir.1966).  "A litigant appearing in propria persona
26  has no authority to represent anyone other than himself [or herself]."  Russell v. United States, 308 F.2d 78, 79 (9th
    Cir.1962).  Non-attorney litigants may not represent others.  Johns v. County of San Diego, 114 F.3d 874, 876 (9th
27  Cir.1997); Church of the New Testament v. U.S., 783 F.2d 771, 774 (9th Cir. 1986).  Thus, a parent or guardian ad
    litem cannot bring an action on behalf of a minor child without retaining a lawyer.  Johns v. County of San Diego,
28  114 F.3d 874, 877 (9th Cir.1997).  This court would normally give the Plaintiffs the opportunity to retain a lawyer.
    However, because the court is recommending that this action be dismissed, the court will not do so in this case.

1   Plaintiffs name numerous individuals including the landlords of the premises,  a private attorney,

2   Fresno County agencies, federal agencies and federal officials, as well as state officials as

3   Defendants. Upon a review of the complaint, this court recommends that the action be dismissed

4   without leave to amend.  In light of this recommendation, it is also ordered that Plaintiffs' Ex

5   Parte Motion for Appointment of Counsel be denied.

6                                                **DISCUSSION**

7   A.      Screening Standard

8            Pursuant to 28 U.S.C. § 1915(e)(2), the court must conduct an initial review of the

9   complaint for sufficiency to state a claim.  The court must dismiss a complaint or portion thereof

10  if the court determines that the action is legally "frivolous or malicious," fails to state a claim

11  upon which relief may be granted, or seeks monetary relief from a defendant who is immune

12  from such relief.  28 U.S.C. § 1915(e)(2).  If the court determines that the complaint fails to state

13  a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be

14  cured by amendment.

15           In reviewing a complaint under this standard, the court must accept as true the allegations

16  of the complaint in question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740

17  (1976), construe the pro se pleadings liberally in the light most favorable to the Plaintiff, Resnick

18  v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor,

19  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

20           Fed. R. Civ. P. 8(a) provides:

21           A pleading which sets forth a claim for relief, whether an original claim, counterclaim,
             cross-claim, or third-party claim, shall contain (1) a short and plain statement of the
22           grounds upon which the court's jurisdiction depends, unless the court already has
             jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short
23           and plain statement of the claim showing that the pleader is entitled to relief, and (3) a
             demand for judgment for the relief the pleader seeks. Relief in the alternative or of
24           several different types may be demanded.

25           A complaint must contain a short and plain statement as required by Fed. R. Civ. P.

26  8(a)(2).  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair

27  notice and state the elements of the claim plainly and succinctly.  Jones v. Community Redev.

28  Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must allege with at least some degree of

                                                    2

1   particularity overt acts which the Defendants engaged in that support Plaintiff's claim.  Id.

2   Although a complaint need not outline all elements of a claim, it must be possible to infer from

3   the allegations that all elements exist and that there is entitlement to relief under some viable

4   legal theory.  Lewis v. ACB Business Service, Inc., 135 F.3d 389, 405-06 (6th Cir. 1998).

5          "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such

6   dismissal may be made without notice where the claimant cannot possibly win relief."  Omar v.

7   Sea-Land Service, Inc., 813 F.2d 986, 991 (9th Cir. 1987); see Wong v. Bell, 642 F.2d 359, 361-

8   362 (9th Cir. 1981).  Sua sponte dismissal may be made before process is served on Defendants.

9   Neitzke v. Williams, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often

10  made sua sponte); Franklin v. Murphy, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss

11  frivolous in forma pauperis action sua sponte prior to service of process on Defendants).

12         Since Plaintiffs proceed in forma pauperis, this court shall dismiss this case at any time if

13  the court determines it is frivolous, malicious, fails to state a claim on which relief may be

14  granted, or seeks monetary relief against an immune defendant.  See, 28 U.S.C. § 1915(e); 2

15  Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before

16  Trial (2006) Attacking the Pleadings, para. 9:226.1, pp. 9-69.  A court need not accept as true

17  factual allegations in in forma pauperis complaints and may reject "completely baseless"

18  allegations, including those which are "fanciful," "fantastic" or "delusional."  Denton v.

19  Hernandez, 504 U.S. 25, 32, 112 S.Ct. 1728, 1733 (1992).

20         A claim is legally frivolous when it lacks an arguable basis either in law or fact.  Neitzke

21  v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d at 1228.  A frivolous claim

22  is based on an inarguable legal conclusion or a fanciful factual allegation.  Neitzke v. Williams,

23  490 U.S. at 324.  A federal court may dismiss a claim as frivolous where it is based on an

24  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke

25  v. Williams, 490 U.S. at 327.

26         The face of the complaint reflects deficiencies and immunities that prevent Plaintiffs from

27  establishing cognizable claims.

28  ///

B.     Plaintiffs' Allegations

Plaintiffs bring this action against Defendants Mario Santos and Patricia Soto, the alleged landlords of the premises; Steven R. Hrdlicka, Esquire, the landlords' counsel in the unlawful detainer action; The Law Firm of Steven R. Hrdlicka, & Associates; Governor Arnold Schwarzenegger, Edmund G. Brown, Jr., the Attorney General of the State of California; the United States Department of Housing and Urban Development; Steven Preston, Secretary of Housing and Urban Development; the Housing Authority of the City and County of Fresno; Preston Prince, the Director of Housing Authority of the City and the County of Fresno; Annette Lazzareschi, Eligibility Supervisor of Housing Authority of the City and County of Fresno; Graciela Garcia, Housing Coordinator of the Housing Authority of the City and County of Fresno; Ronald M. George, Chair of the Judicial Council of California; the Judicial Council of California; Hilary Chittick, Presiding Judge of the Fresno County Superior Court; the Honorable Don D. Penner, Judge of the Fresno County Superior Court; the Honorable Donald S. Black, Presiding Judge, Appellate Division of the Fresno Superior Court;[2] the Fresno County Superior Court; Tamera Beard, Clerk of the Fresno County Superior Court; and Susan Yepiz, Deputy Clerk the Fresno County Superior Court.[3] Complaint at ¶23, and ¶¶ 101-119.

Plaintiffs' complaint alleges sixty causes of action.  Complaint at ¶¶ 376 - 836.  Pursuant to 42 U.S.C. § 1983,  Plaintiffs allege violations of the First, Fifth, Ninth and Fourteenth Amendments of the Constitution; violations of the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq.; violations of  the Fair Housing Act, 42 U.S.C. 3601 et seq. (Hereinafter, "The Fair Housing Act"); and violations of several Housing and Urban Development (Hereinafter, "HUD") regulations.   In addition, Plaintiffs allege violations of Title II of the Americans with Disabilities

---

[2] Judge Don Penner and Judge Donald Black are not listed as Defendants in the caption of the complaint but they are identified as Defendants in the body of the complaint.

[3] Although Plaintiffs indicate that Defendants are being sued in their official capacities, for purposes of Plaintiffs' section 1983 claims, the court presumes that Defendants are sued in their individual capacities, as well, because Plaintiffs state claims for damages.  Hydrick v. Hunter, 500 F.3d 978, 987 (9th Cir. 2007) (in a section 1983 suit for money damages, it is presumed to be one against defendants in their individual capacities).

1  Act, 42 U.S.C. §§ 12131 and 12132 ("ADA"), and Section 504 of the Rehabilitation Act, 29

2  U.S.C. § 794 ("RA"), as well as numerous violations of California law.  Complaint at ¶¶ 9-10.

3        Although not entirely clear, the compliant alleges that on August 31, 2006, Plaintiff

4  McGlothin entered into a Housing Assistance Payments Program Contract (hereinafter, "the

5  contract") with Defendants Mario Santos and the Housing Authority of the City and County of

6  Fresno (hereinafter, "Housing Authority") pursuant to Section 8 of the United States Housing Act

7  to receive subsidized housing.  Complaint at ¶ 7.   Shortly after moving into the residence,

8  Plaintiff McGlothin alleges that in September and October 2006, she was served with 3 "Three

9  Day Notices to Perform Conditions and/or Covenants or Quit" (Hereinafter, "three day notice to

10  quit") after she made complaints to the Housing Authority regarding the habitability of the

11  premises.  Complaint at ¶ 70.  Plaintiffs allege that on October 11, 2006,  the contract was

12  unlawfully terminated.  Complaint at ¶ 13.   Shortly thereafter, McGlothin alleges she and her

13  children were unlawfully evicted from the premises after unlawful detainer hearings were held in

14  the Fresno County Superior Court (Case Number 06 CECL 08023) on January 30, 2007 and

15  February 1, 2007.  Complaint at ¶ 14.  Plaintiffs allege that the eviction was the result of

16  Defendants Santos, Soto, and Hrdlicka conspiring with California officials and agencies to

17  retaliate against them and other African Americans who complain about substandard living

18  conditions of low income housing.  Complaint at ¶ 12, ¶¶ 61-69.

19        Additionally, Plaintiffs allege that one of the stated reasons for the eviction, which was

20  that Plaintiff Sconiers (McGlothin's mother) was residing at the apartment as an unauthorized

21  tenant, violates the ADA and RA because McGlothin suffers from post traumatic stress syndrome,

22  post partum depression, migraine headaches, anemia, and fatigue.  Complaint at ¶¶ 2-6.   Plaintiff

23  Sconiers, who also suffers from a number of mental health illnesses, alleges that she was at the

24  premises as a guest/live-in aid and was only there to act as McGlothin's agent and to assist

25  McGlothin with her children.   Id.  Further, Plaintiffs also allege that various judges including the

26  Honorable Hilary Chittick, the Honorable Judge Donald S. Black, and the Honorable Don Penner

27  engaged in actions of obstruction and fraud resulting in violations of Plaintiff McGlothin's rights

28  in the course of the state eviction proceedings.  Complaint at ¶ 23.

1    Finally, Plaintiffs allege that this eviction was unlawful because the Housing Authority

2 never held an informal administrative hearing and denied Plaintiff McGlothin's right to due

3 process by failing to give her proper notice of the charges against her. Complaint at ¶ 8. Plaintiffs

4 allege that the unlawful detainer hearing does not meet the due process requirements pursuant to

5 24 C.F.R. § 966.53(c)(2) and 24 CFR § 982, and that Defendants Housing Authority and the

6 County of Fresno have failed to establish and maintain an administrative grievance procedure for

7 the resolution of tenant disputes pursuant to 42 U.S.C. § 1437d(k). Complaint at ¶ 18-21.

8    Plaintiffs are requesting monetary damages, as well as declaratory and injunctive relief.

9 The crux of Plaintiffs' claims for equitable relief is that the state eviction proceedings from the

10 Fresno County Superior Court be transferred to this court so that Plaintiff McGlothin's Section 8

11 eligibility can be reinstated. Complaint at ¶ 24. Further, Plaintiffs request that: 1) the court

12 declare that Plaintiff McGlothin was illegally evicted, 2) that Plaintiff Sconiers be allowed to

13 reside in Section 8 housing with her daughter, and 3) that Defendants pay restitution to Plaintiffs

14 for being evicted from the premises. Complaint at ¶¶ 24, 28-31 and pgs. 189-201. Plaintiffs also

15 request that the Housing Authority be enjoined from engaging in discriminatory practices in the

16 future. Complaint at ¶ 49.

17 C.    Claims

18    *1. Standing*

19    As a preliminary matter, the majority of the relief Plaintiffs are seeking is equitable relief

20 in the form of declaratory and injunctive relief. However, in order to invoke jurisdiction of the

21 federal courts, parties must satisfy the threshold requirement imposed by Article III of the

22 Constitution by alleging an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S.

23 95, 103 (1983). In the context of injunctive relief, Plaintiffs must allege an injury in fact as well

24 as a sufficient likelihood that they will again be wronged in a similar way. City of Los Angeles v.

25 Lyons, 461 U.S. at 111. That is, a real and immediate threat of repeated injury exists . O'Shea v.

26 Littleton, 414 U.S. 488, 496, 94 S.Ct. 669 (1974).

27    The Ninth Circuit recently applied the requirement that a plaintiff show a "real or

28 immediate threat of repeated injury" to bar a claim for equitable relief brought by a tenant who

had vacated the premises at issue in the suit. See, Harris v. Itzhaki, 183 F.3d 1043, 1050 (9th Cir.1999) (holding that a tenant's claims for declaratory and prospective injunctive relief were properly dismissed because they were "rendered moot by [the tenant]'s departure from the Shenandoah Apartments"). In this case, Plaintiffs no longer reside at the premises in question and as a result, they lack standing to bring claims requesting equitable relief including declaratory or injunctive relief.

To the extent that Plaintiffs seek equitable relief for others, they are precluded from doing so as they have filed this action pro se and are precluded from representing others. See, footnote 1, infra. Further, Plaintiffs' allegations regarding Defendants alleged unlawful practices toward other individuals are conclusory and lack the sufficient factual basis necessary to establish these causes of action or the injunctive relief that Plaintiffs are seeking. Because Plaintiffs lack standing to seek injunctive relief on her own behalf, they consequently lack standing to represent others who might suffer future discrimination. See, B.C. Plumas Unified School District, 192 F. 3d 1260, 1264 (9th Cir. 1999) (Affirming district court's dismissal of "plaintiff's class claims for injunctive relief."). [4]

   *2. Rooker-Feldman Doctrine*

Plaintiffs are requesting that this court alter the judgment in the state eviction proceedings that were heard in the Fresno County Superior Court. Complaint at ¶ 24. However, it is unclear from the complaint if an appeal was filed and if so, whether the appeal is still pending. However, regardless of the status of the appeal, this court should not hear Plaintiffs' claims. To the extent that the complaint attempts to attack state court orders and proceedings, this court is not the proper forum to do so.

If the state court has issued a final judgment, this court lacks jurisdiction. Federal courts lack jurisdiction to review or modify state court judgments under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303 (1983). The *Rooker-Feldman*

---

[4] The court recognizes that Plaintiffs have not filed a class action, however, the same principles regarding standing would apply.

1   doctrine is based on 28 U.S.C. § 1257 which grants the United States Supreme Court jurisdiction

2   to review decisions of the highest state courts for compliance with the federal Constitution.  See

3   Rooker, 263 U.S. 413, 44 S.Ct. 149; Feldman, 460 U.S. at 482, 103 S.Ct. 1303.  The doctrine

4   provides that "lower federal courts do not have jurisdiction to review a case litigated and decided

5   in state court; only the United States Supreme Court has jurisdiction to correct state court

6   judgments." Gottfried v. Medical Planning Services, 142 F.3d 326, 330 (6th Cir. 1998).  "This is

7   equally true in constitutional cases brought under [28 U.S.C.] § 1983, since federal courts must

8   give 'full faith and credit' to the judicial proceedings of state courts.'"  Gottfried, 142 F.3d at 330

9   (citing 28 U.S.C. § 1738).

10         "Federal district courts lack subject matter jurisdiction to review such final adjudications

11  or to exclude constitutional claims that are 'inextricably intertwined with the state court's

12  [decision] in a judicial proceeding.'"  Valenti v. Mitchell, 962 F.2d 288, 296 (3rd Cir. 1992)

13  (quoting Feldman, 460 U.S. at 483, n. 16).  This rule applies to "inextricably intertwined" with

14  final state court decisions, even if such "inextricably intertwined" claims were not raised in state

15  court.  See, District of Columbia Court of Appeals v. Feldman, 460 U.S. at 483-487 and n. 16;

16  Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Olson Farms, Inc. v. Barbosa, 134 F.3d 933,

17  937 (9th Cir. 1998) (holding the Rooker-Feldman doctrine is jurisdictional).  Thus, "[A] losing

18  party in state court is barred from seeking what in substance would be appellate review of the state

19  judgment in a United States District Court, based on the losing party's claim that the state

20  judgment itself violates the loser's federal rights."  Johnson v. DeGrandy, 512 U.S. 997, 1005-

21  1006 (1994).

22         In this case, Plaintiffs are requesting that this court reinstate the lease and permit Plaintiff

23  Sconiers to stay at the premises.  Hence, they are challenging the right of possession of the

24  premises which is the exact issue that was adjudicated in the state eviction proceedings.

25  Accordingly, if there is a final judgement in the state proceeding, this court does not have

26  jurisdiction over the claim.

27  ///

28  ///

1    *3. Younger Abstention*

2    Similarly, if the unlawful detainer case is still pending in the state court, this court should

3    not interfere with those proceedings.  "Younger abstention is a common law equitable doctrine

4    holding that a federal court generally should refrain from interfering with a *pending* state court

5    proceeding." Poulos v. Caesars World, Inc., 379 F.3d 654, 669 (9th Cir. 2004) (emphasis added)

6    (citations omitted).  Younger abstention is required if: (1) state proceedings are ongoing; (2) the

7    proceedings implicate important state interests; and (3) the state proceedings provide an adequate

8    opportunity to raise federal questions.  Wiener v. County of San Diego, 23 F.3d 263, 266 (9th

9    Cir.1994).

10    The state has an important and substantial interest in overseeing, managing and

11    adjudicating housing related issues.  Although subsidized housing is a federally funded program,

12    the state is responsible for administering and implementing the program.  Thus, the state has a

13    substantial interest in insuring that the program gets implemented fairly and that disputes are

14    handled consistently.

15    Furthermore, the state unlawful detainer proceedings provided Plaintiff McGlothin with an

16    opportunity to raise federal questions.  In unlawful detainer actions under California law, tenants

17    generally may assert legal or equitable defenses that "directly relate to the issue of possession and

18    which, if established would result in the tenant's retention of the premises." Green v. Superior

19    Court of San Francisco, 10 Cal. 3d. 616, 633 (1974).  Among such defenses are discriminatory

20    and retaliatory evictions, as well as violations of the Fair Housing Act which are all claims

21    Plaintiffs have raised in the instant complaint.  Green v. Superior Court of San Francisco, 10 Cal.

22    3d. at 633; (warranty of habitability defense permitted in unlawful detainer action); Schweiger v.

23    Super.Ct., 3 C3d 507, 517 (1970) (retaliatory eviction defense permitted in unlawful detainer

24    action ); Abstract Invest. Co. v. Hutchinson 204 CA2d 242 (1962) (racial discrimination defense

25    permitted in unlawful detainer action); Western Land Office Inc., v. Cervantes, 175 Ca. App. 3d

26    724, 734 (1985) (same);  Colony Cove Associates v. Brown, 220 Cal. App. 3d 195 (1990)

27

28

1   (violation of Fair Housing Act defense permitted in unlawful detainer action).  [5]  Thus, the federal

2   question claims outlined in the instant complaint could have been raised during the unlawful

3   detainer hearing.  Accordingly, this court should not interfere in the state proceeding.

4       While abstention is inappropriate if the state proceedings are instituted in bad faith or if

5   harassment is evident, assertions of bad faith or harassment are insufficient if they are conclusory

6   and unsupported by specific facts.  World Famous Drinking Emporium, Ind., 820 F.2d 1079, 1082

7   (9th Cir. 1987); Roberts v. Carrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).  Since Plaintiffs'

8   assertions of bad faith are conclusory and unsupported, abstention pursuant to Younger is

9   appropriate.

10      In short, the complaint reveals no grounds to properly invoke this court's jurisdiction.

11  Even if this court has jurisdiction, Plaintiffs' complaint would fail for the reasons set forth below.

12      *4.*     *42 U.S.C. Section 1983*

13          a.     *Linkage*

14      Under section 1983, Plaintiffs are required to show that Defendants (1) acted under color

15  of state law, and (2) committed conduct which deprived Plaintiff of a federal right.  Hydrick v.

16  Hunter, 500 F.3d at 987.  "A person deprives another of a constitutional right, where that person

17  'does an affirmative act, participates in another's affirmative acts, or omits to perform an act

18  which [that person] is legally required to do that causes the deprivation of which complaint is

19  made.'"  Id. at 988 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "[T]he

20  'requisite causal connection can be established not only by some kind of direct, personal

21  participation in the deprivation, but also by setting in motion a series of acts by others which the

22  actor knows or reasonably should know would cause others to inflict the constitutional injury.'"

23  Id. (quoting Johnson at 743-44).

24      Therefore, in order to state a claim for relief under section 1983, Plaintiffs must link each

25  named defendant with some affirmative act or omission that demonstrates a violation of their

26  federal rights.  However, Plaintiffs' complaint does not contain any facts that link any of the

27

28      [5]  Additionally, under California law, tenants who are victims of a landlord's retaliatory conduct have common law and statutory remedies available to them.  See, Barela v. Superior Ct., 30 C3d 244, 251 (1981); Rich v. Schwab, 63 CA 4th 803, 811 (1998); See also, Cal. Civ. Code § 1942.5 and Cal. Civ. Proc. § 1174.2.

1   Defendants to the deprivations alleged.  Rather than the required "direct, personal participation,"

2   Plaintiffs allege only conclusory, generalized statements unsupported by anything other than their

3   perception that they were wronged.  In fact, Plaintiffs group the Defendants together in several of

4   the allegations, so that several Defendants are involved in almost all of the alleged deprivations.

5           Moreover, Plaintiffs have named Steven Hrdlicka, Esquire, and the Law Firm of Steven

6   Hrdlicka who represented Defendants Santos and Soto in the unlawful detainer action in several

7   causes of action.  However, private citizens are not amenable to suit under 42 U.S.C. § 1983 as

8   state actors.  See, Lugar v. Edmondson Oil Co., 457 U.S. 922, 927 (1982).  Plaintiffs must show

9   that the Defendants acted under color of state law.  Howerton v. Garcia, 708 F. 2d 380, 382 (9th

10  Cir. 1983).  "Actions taken by private individuals may be 'under color of state law' where there is

11  'significant' state involvement in the action.  Id.  Plaintiffs have failed to establish that Defendant

12  Hrdlicka and his law firm acted under color of state law or that there their participation constituted

13  significant state involvement in the action.   The mere filing of the unlawful detainer action cannot

14  be attributed to the state.  See, Lugar v. Edmunson Oil Co., Inc., 457 U.S. at 941.  Accordingly,

15  Plaintiffs have not stated a claim under section 1983 against these Defendants.

16

17          b.      *Violations of Due Process and  Violations of Federal Housing Laws and*
                    *Regulations - First through Fifth, Fifteenth through Twenty Eighth, Thirty-*
18                  *Seventh, Fiftieth and Fifty-Eighth Causes of Action*

19

20          The Due Process Clause of the Fourteenth Amendment protects individuals from being

21  deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S.

22  539, 556 (1974).  Procedural due process claims require (1) a deprivation of a constitutionally

23  protected liberty or property interest, and (2) a denial of adequate procedural protections.  Kildare
    v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).

24

25          The Supreme Court has held that "state proceedings need to no more than satisfy the

26  minimum procedural requirements of the Fourteenth Amendment Due Process Clause in order to

27  qualify for the full faith and credit guaranteed by federal law.  Kremer v. Chemical Construction
    Corporation, 456 U.S. 461, 481 (1982).  Appropriate safeguards include the right to submit

28  exhibits, present evidence, present the testimony of witnesses, rebut evidence submitted and be

assisted by counsel.  Kremer v. Chemical Construction 456 U.S. at 483-484.  Plaintiff McGlothin

was afforded all of these safeguards during the unlawful detainer hearing including the right to

appeal. Cal. Civ. Proc. § 1159-1179a; Cal. Civil Proc. §§ 904.1 and 904.2.   Further, many of the

causes of actions relate to the judge's rulings made during the course of the unlawful detainer

hearing.   Complaint at ¶¶ 467-538.  Given that Plaintiff McGlothlin had an opportunity to appeal

all of the judge's rulings, no due process violation exists.[6]  Complaint at ¶¶ 76-78.

      Additionally, many of Plaintiff McGlothin's due process claims involve violations of

various federal housing laws and regulations as well as a lack of proper notice.  She alleges that

the Housing Authority violated 42 U.S.C. § 1437f  by terminating her from Section 8 housing

because she did not violate a program requirement. Complaint at ¶¶ 376-379.   Furthermore, she

alleges that the Housing Authority unlawfully failed to provide her with an administrative hearing

in compliance with federal statutes and HUD regulations prior to the eviction. Complaint

at ¶¶ 38- 48; 541- 558; 562-569.

      As a preliminary matter, the basis for many of the causes of action is that the housing

contract was unlawfully terminated.  However, a review of the documents submitted by the

Plaintiffs indicate that the basis of the eviction from section 8 housing was not the termination of

the contract, but it was Plaintiff McGlothin's violations of the lease.   Moreover, many of the

regulations cited by the Plaintiffs are misplaced as they relate to housing subsidies when the

Housing Authority is the landlord.   However, under the HUD regulations, there is no requirement

that Federal Housing Authorized subsidized landlords (rather than Housing Authority landlords)

hold administrative hearings before evicting tenants.

      To the contrary, the regulations provide that a landlord may terminate a tenancy for: 1)

serious or repeated violations of the conditions of the lease, 2) a violation of federal, state, or local

law concerning occupancy or use of the premises, 3) certain criminal activity, or 4) other good

cause.  42 U.S.C. §1437f(o)(7); 24 C.F.R. § 982.310.  Material noncompliance with the lease

includes: 1) one or more substantial violations of the lease, or 2) repeated minor violations that

---

[6] One of Plaintiff McGlothin's  alleged violations that occurred during the unlawful detainer proceedings
was that the judge appointed counsel for Ms. McGlothin. Further, Plaintiff could have filed for a stay of the
judgment pending the filing of an appeal.  Cal. Civ. Pro. § 1176.

1  disrupt the livability of the building, interfere with the management of the building, or have an

2  adverse financial effect on the building. 24 C.F.R. § 880.607 (b)(3)(i)(A) and (B).  The owner

3  must give the family written notice of the termination prior to the commencement of an eviction

4  action.  This notice may be combined with any owner eviction notice to the tenant.  24 C.F.R.  §

5  982.310(e).

6       Plaintiffs provided the court with a copy of two of the three day notices to quit.  See,

7  Documents Lodged on December 8, 2008 ("Hereinafter, Lodged Documents")  at pg. 1-2.   The

8  three day notice to quit dated October 19, 2006 indicates that Plaintiff McGlothin allegedly

9  breached two lease conditions : 1)  failure to allow the owner to enter the premises to make

10  repairs, and 2) that Plaintiff Sconiers was living on the premises as an unauthorized tenant.[7]

11  Lodged Documents at pg. 1. The notice further informed Plaintiff McGlothin that she may contact

12  the owner to discuss the violation and that failure to comply with the notice may result in the

13  institution of legal proceedings.  Id. The complaint in the unlawful detainer action was filed on

14  October 26, 2006, and the hearing which lasted two days began on January 30, 2007.   See,

15  Lodged Documents at pg. 6-9.  Judgement was entered on February 5, 2007.  See, Lodged

16  Documents at 10.   Plaintiff McGlothin was notified that the eviction date would be February 15,

17  2007.  See, Lodged Documents at 11. Since Plaintiff McGlothin was served with notice of the

18  violations prior to the initiation of the eviction, it appears that there was no violation of the

19  applicable HUD regulatory requirements and she cannot state a claim on that basis. See also,  24

20  C.F.R.  §§ 247.3 and 247.4.  This notice also complies with California notice requirement for an

21  eviction.  Section 1161(3) of the Californian Code of Civil Procedure provides that a tenant who

22  continues in possession after failing to perform a condition or covenant of the lease is guilty of

23  unlawful detainer if the tenant has been served with a 3-day notice in writing. Cal. Civ. Pro. §

24  1161(3).[8]

25

26  [7] According to the complaint, there were 3 three day notices dated September 22 and 28, 2006, and October 19, 2006, that were served on Plaintiff McGlothin.  Complaint at ¶ 70. Plaintiff only provided the court with copies

27  of the notices dated September 22, 2006 and October 19, 2006.

28  [8] Plaintiffs have requested that the court order that their personal property which was at the residence at the time of the eviction be returned.  However, it appears from the documents submitted by the Plaintiffs that the landlord did advise Plaintiffs that they had left personal belongings at the residence and that they needed to retrieve

1   Finally, allegations  related to a lack of notice requirements or lack of compliance with

2   HUD regulations and California law could have been raised as a defense at the unlawful detainer

3   hearing.  Strict compliance with the notice conditions is a prerequisite for invoking unlawful

4   detainer hearings.  See, Saberi v. Bakhtiari, 169 Cal. App. 3d 509, 516 (1985) (reversing judgment

5   for failure to comply with proper notice procedures); Kwok v. Bergen, 130 Cal. App. 3d. 596, 599

6   (1982) (same).  Similarly, as explained previously in section 3, infra, Plaintiffs' allegations of

7   violations of the Fair Housing Act also could have been raised at the during the unlawful detainer

8   hearing. Complaint at ¶ ¶ 579- 598; 645-647.

9       c.   *Supervisorial Liability - Sixth through Thirteenth Causes of Action*

10   Plaintiffs name Defendants Schwarzenegger, Brown, Preston, Hrdlicka, Prince, George,

11   Chittick, and Beard, for their failure to adequately supervise, control and discipline persons under

12   their command which resulted in failure to insure compliance with the law.  Complaint at ¶¶ 411-

13   466 .

14   "Although there is no pure *respondeat superior* liability under § 1983, a supervisor [may

15   be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or

16   directed the violations, or knew of the violations and failed to act to prevent them.'" Hydrick v.

17   Hunter, 500 F.3d at 988 (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

18   Plaintiffs wholly fails to explain the supervisorial role of any of the named Defendants and

19   fails to make any allegations of direct participation.  It is unlikely that they all have the direct

20   involvement necessary to sustain supervisorial liability under section 1983.

21       d.   *Judicial Immunity - Twelfth through Fifteenth Causes of Action*

22   Further, Plaintiffs have named several Judges, the Clerk, and Deputy Clerk of the Fresno

23   County Superior Court as Defendants in this action.  However, judges are absolutely immune

24   from damages for judicial acts taken within the jurisdiction of their courts.  Schucker v.

25   Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988); Imbler v. Pachtman, 424 U.S. 409, 418 (1976).

26   Similarly, court clerks have absolute quasi-judicial immunity from damages for civil rights

27

28   them or else the property would be deemed abandoned.  Civil Code § 1980-1989.  Lodged Documents at pg. 12.
     State remedies were available to Plaintiffs to retrieve the personal items.  California Civil Code § 1965.

1   violations when they perform tasks that are an integral part of the judicial process.  Mullis v.

2   United States Bankruptcy Court, 828 F.2d 1385 (9th Cir. 1987); Morrison v. Jones, 607 F.2d

3   1269, 1273 (9th Cir. 1979), cert. denied, 445 U.S. 962 (1980).  Here, Plaintiffs are alleging

4   unlawful conduct that was part of the judicial process. Thus, Plaintiffs are advised that Defendants

5   Chittick, Penner, Black, Beard, and Yepiz are immune from damages.

6        e.    *Qualified Immunity of Government Officials*

7        Government officials enjoy qualified immunity from civil damages unless their conduct

8   violates "clearly established statutory or constitutional rights of which a reasonable person would

9   have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of

10  qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party

11  asserting the injury, the facts alleged show the Defendant's conduct violated a constitutional right.

12  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next

13  step is to ask whether the right was clearly established.  Id.  The inquiry "must be undertaken in

14  light of the specific context of the case, not as a broad general proposition . . . ."  Saucier v. Katz,

15  533 U.S. 194, 201 (2002).  "[T]he right the official is alleged to have violated must have been

16  'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the

17  right must be sufficiently clear that a reasonable official would understand that what he is doing

18  violates that right."  Saucier v. Katz, 533 U.S. at 202 (citation omitted).  In resolving these issues,

19  the court must view the evidence in the light most favorable to Plaintiff and resolve all material

20  factual disputes in favor of Plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

21  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

22  law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

23       Here, Plaintiffs makes generalized allegations against Defendants, several of whom are

24  government officials.  Plaintiffs has failed to demonstrate that their actions violated a

25  constitutional right for the reasons discussed throughout this order.   Accordingly, Defendants

26  who are government officials are entitled to qualified immunity from civil damages.

27  ///

28  ///

f.      *Further Immunity*

Defendants which are state entities are also entitled to immunity under the Eleventh Amendment to the federal Constitution.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State."  The United States Supreme Court has noted: "The [Eleventh] Amendment . . . enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject matter jurisdiction."  Idaho v. Couer d'Alene Tribe, 521 U.S. 261, 117 S.Ct. 2028, 2033 (1997).

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state.  Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states."  Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991), cert. denied, 503 U.S. 938 (1992)(citation omitted); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 1122 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).

The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant.  See, Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. at 144; Natural Resources Defense Council v. California Dept. of Transportation, 96 F.3d 420, 421 (9th Cir. 1996); Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d at 1053; see also Lucas v. Department of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (Board of Corrections is agency entitled to immunity); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity).

The Eleventh Amendment's bar to actions against states and their entities in federal courts provides further grounds to dismiss the complaint.  The complaint alleges no conduct that falls outside the scope of the immunities.  Thus, Defendants the Judicial Council  and the Fresno County Superior Court are immune from this suit.

1

   g.  *Conspiracy Claim - Fortieth Cause of Action*

2      Although Plaintiffs have not explicitly cited to 42 U.S.C § 1983 in the fortieth cause of

3 action, the court presumes that Plaintiffs are alleging conspiracy pursuant to 42 U.S.C. § 1983 as

4 section 1983 was referenced earlier in the complaint.[9]  Complaint at ¶¶ 654-680.  Plaintiffs'

5 conspiracy claims under section 1983 fails for many of the same reasons the other section 1983

6 claims failed, as discussed above.  However, Plaintiffs' claim also fails on a substantive basis.

7      A conspiracy claim brought under section 1983 requires proof of "'an agreement or

8 meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th

9 Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41

10 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks,

11 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866

12 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not

13 know the exact details of the plan, but each participant must at least share the common objective

14 of the conspiracy.'"  Franklin v. Fox, 312 F.3d at 441 (quoting United Steel Workers v. Phelps

15 Dodge Corp., 865 F.2d at 1541).

16      The federal system is one of notice pleading, and the court may not apply a heightened

17 pleading standard to Plaintiff's allegations of conspiracy.  Empress LLC v. City and County of

18 San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d

19 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be

20 [sufficient] to raise a right to relief above the speculative level . . . ."  Bell Atlantic Corp. v.

21 Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).  A plaintiff must set forth "the

22 grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a

23 formulaic recitation of the elements of a cause of action . . . ."  Id. at 1964-65 (internal quotations

24 and citations omitted).  As such, a bare allegation that Defendants conspired to violate Plaintiffs'

25 constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.  Indeed,

26

27 ─────────────────

28      [9] Plaintiffs list the conspiracy cause of action under their category of state claims.  Even if Plaintiffs intended to pursue this cause of action under a state law theory of liability, the court would decline jurisdiction for the reasons outlined in section i of this order.

1  Plaintiffs' conspiracy claim is comprised of nothing more than conclusory sentences, without

2  explanation or factual support.

3        h.        *Constitutional and Equitable Claims - Fourteenth, Sixteenth, Forty-Ninth, Fiftieth,*
                  *and Fifty-Ninth Causes of Action*

4

5        Plaintiffs make several general statements that Defendants violated their rights under the

   First, Ninth and Fourteenth Amendment of the United States Constitution.  Complaint at ¶¶ 788-
6
   791;797-801and 827-836.  The Court has reviewed these causes of action and has determined that
7
   they have no legal basis.   Similarly, Plaintiff McGlothin also alleges that her Sixth Amendment
8
   rights were violated by Defendants in the unlawful detainer hearing because the judge appointed
9
   counsel over her objection. Complaint at  ¶¶ 467 - 494; 531-538.  However, as explained
10
   previously, any decisions that the judge made during the course of the unlawful detainer hearing
11
   could have been be raised on appeal in the state case.   This court is not the appropriate forum to
12
   review state court rulings.   Therefore, these causes of action shall be dismissed without leave to
13
   amend.
14
         i.        *State Based Violations - Fourteenth through Sixteenth Causes of Action*
15
         Plaintiffs allege several violations based on section 1983 violations of California state law
16
   or regulations.  Complaint at ¶¶ 467- 532.  Section 1983 actions, however, require deprivation of a
17
   *federal* rather than a state right.  Hydrick v. Hunter, 500 F.3d at 987.  Accordingly, these causes of
18
   action should be dismissed without leave to amend.
19
         j.        *Summary of Section 1983 Claims*
20
         Although leave to amend would normally be granted to allow Plaintiffs an opportunity to
21
   correct some of the  deficiencies outlined above, leave to amend would be futile given the
22
   application of Younger abstention or the Rooker Feldman Doctrines.
23
         5.        *ADA and RA Claims - Twenty-Ninth through Thirty-Sixth Causes of Action*
24
         Plaintiffs allege various violations of the ADA and RA.  For each claim under the ADA,
25
   Plaintiffs makes the identical claim under the RA.
26
         Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act
27
   (RA) "both prohibit discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039,
28

1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U. S. C. § 794.

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of her disability."  Lovell v. Chandley, 303 F.3d at 1052.  Similarly, "[t]o establish a violation of § 504 of the RA, a plaintiff must show that (1) [she] is handicapped within the meaning of the RA; (2) [she] is otherwise qualified for the benefit or services sought; (3) [she] was denied the benefit or services solely by reason of [her] handicap; and (4) the program providing the benefit or services receives federal financial assistance."  Id.

Plaintiffs' claims under the ADA and RA allege that Defendants (1) fail to administer California state programs in a manner that supports the availability of services and programs in the most integrated setting for individuals with disabilities; (2) utilize methods of administration that subject disabled individuals to discrimination, and which perpetuate the current eviction system rather than facilitate the receipt of services in the most integrated setting appropriate to Plaintiffs' needs, and (3) discriminate against Plaintiffs on the basis of their mental illness by refusing to provide notice and adequate due process.  Complaint at ¶¶ 605-644.

Despite Plaintiffs' claims, they fail to state claims under either the ADA or RA.  As a preliminary matter, the claims related to discrimination based on a disability could have been raised at the unlawful detainer hearing as a defense.  Moreover, it is Plaintiff McGlothin's contract for section 8 housing that is at issue in this complaint.  Ms. Sconiers did not sign the contract, nor was she participating in, or eligible to receive section 8 housing.  Therefore, she was not even a participant in the program, nor can she establish that she was excluded from the

1  program because of a disability.  Accordingly, Plaintiff Sconiers' claims under the ADA or the

2  RA are without merit.

3      Similarly, although Plaintiff McGlothin alleges she was qualified to receive subsidized

4  housing, she did not allege facts showing that her disability was the reason that she was evicted

5  from section 8 housing.  See McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir.2004)

6  (listing requirements to state a claim under the ADA); Wong v. Regents of Univ. of Cal., 410 F.3d

7  1052, 1055 n. 1 (9th Cir.2005) (RA creates same rights and obligations as ADA); see also Doe v.

8  Pfrommer, 148 F.3d 73, 82 (2d Cir.1998) (ADA and RA do not provide a cause of action for

9  challenging adequacy of state programs without showing of disparate or discriminatory

10 treatment).  According to the complaint,  one of the reasons for termination of the contract was

11 that Plaintiff Sconiers was living at the residence in violation of the terms of the lease.  Plaintiff

12 McGlothin alleges that the eviction on this basis is in violation of the ADA and the RA because

13 the landlord did not make the appropriate accommodation to allow her mother to reside there as a

14 live-in aide to assist her with her disabilities.  However, pursuant to 24 C.F.R. § 966.4(d)(3)(i)

15 and (ii), a tenant may obtain consent from the Housing Authority to allow a live-in aide at the

16 premises in order to make a reasonable accommodation for handicapped persons.  Plaintiff does

17 not allege that she ever made that application.  Id.  Further, Plaintiff McGlothin does not allege in

18 the complaint that Defendants even knew of her disability at the time the time she was served with

19 the notices of the alleged lease violations, or that they knew of her disability at the time the

20 unlawful detainer proceedings were initiated.  Given that the violations of the lease also alleged

21 Plaintiff McGlothin denied the landlord access to the premises to make repairs to the residence,

22 she cannot establish that she would have qualified for the benefit, or that she was evicted because

23 of her disability.

24     Plaintiffs are therefore unable to state causes of action under the ADA and RA and these

25 causes of action should be dismissed without leave to amend.

26 ///

27 ///

28 ///

6.   *State Law Claims - Forty-First through Forty-Eighth, Fifty-Second through Fifty-Seven and Sixtieth Causes of Action*

Plaintiffs remaining causes of action are based upon violations of California law. As the Court has dismissed the claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over these state law claims. See 28 U.S.C. § 1367(c)(3); see also Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir.2001) (holding that the district court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it had original jurisdiction). Accordingly, these should be dismissed without leave to amend.

7.   *Claims for Relief - Twentieth, Twenty-fourth, Thirty-Eighth and Thirty-Ninth Causes of Action*

The remaining causes of action seek equitable, declaratory, or injunctive relief. For the reasons stated in the order, Plaintiffs are not entitled to such relief. Therefore, theses causes of action should be dismissed without leave to amend.

D.   Malice

The instant complaint, as well as Plaintiff Sconiers' litigation history before this court, suggests that Plaintiff Sconiers brings this action with malice and in the absence of good faith in an attempt to vex the administrative Defendants who ruled against her. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 46 (1915); See Wright v. Newsome, 795 F.2d 964, 968, n. 1 (11th Cir. 1986). A lack of good faith is found most commonly in repetitive suits filed by plaintiffs who have used the advantage of cost-free filing to file a multiplicity of suits. A complaint is malicious if it suggests an intent to vex defendants or abuse the judicial process by relitigating claims decided in prior cases. Crisafi v. Holland, 655 F.2d 1305, 1309 (D.C. Cir. 1981); Phillips v. Carey, 638 F.2d 207, 209 (10th Cir. 1981); Ballentine v. Crawford, 563 F.Supp. 627, 628-629 (N.D. Ind. 1983); cf. Glick v. Gutbrod, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material

1   allegations of fact or false statements made with intent to deceive the court.  See Horsey v. Asher,

2   741 F.2d 209, 212 (8th Cir. 1984)

3       This is Plaintiff Sconiers' fifth action brought in pro se and in forma pauperis before this

4   court. [10] Plaintiff Sconiers filed two other actions on the same day that the instant complaint was

5   filed.  It has been recommended that one of these actions be dismissed without leave to amend and

6   the other complaint has yet to be screened as of the date of this order.  Sconiers' complaints share

7   a common thread - they are brought against a multitude of state officials and allege endless causes

8   of action for what she perceives to be fraudulent actions against her in the denial of state or

9   federal benefits.  Moreover, although Plaintiff Sconiers' complaints are voluminous (some are

10  over 100 pages in length), they appear to be supported by little more than vague, conclusory

11  statements.  It is becoming apparent to this court that Plaintiff Sconiers is taking advantage of her

12  in forma pauperis status to file multiple meritless lawsuits.  This lack of good faith is therefore

13  another reason to recommend dismissal of this action against Plaintiff Sconiers.

14  E.      Plaintiffs' Motion for Appointment of Counsel

15      Plaintiffs McGlothin and Sconiers are proceeding in forma pauperis and have requested

16  the appointment of counsel.  Plaintiffs have filed a motion consisting of 72 pages which contains

17  virtually the same allegations contained in the complaint.  The court has reviewed this motion and

18  determined that the claims contained therein are without merit.  The United States Supreme Court

19  has ruled that district courts lack authority to require counsel to represent indigent persons in §

20  1983 cases.  Mallard v. United States District Court for the Southern District of Iowa, 490 U.S.

21  296, 298, 109 S.Ct. 1814, 1816 (1989).  Only under exceptional circumstances may a district

22  court appoint counsel to represent an indigent civil litigant.  See, Wilborn v. Escalderon, 789 F. 2d

23  1328, 1331 (9th Cir. 1986); 28 U.S.C. § 1915(e)(1).  A finding of exceptional circumstances

24  requires an "evaluation of both the likelihood of success on the merits [and] the ability of the

25

_____

26      [10] In addition to this action, Plaintiff Sconiers has filed several cases in this district including 1:06cv1260
    AWI LJO, 1:07cv972 AWI DLB, 1:08cv1288 LJO SMS and 1:08cv1289 OWW DLB.  The Court first questioned
27  Plaintiff Sconiers intentions in the September 27, 2006, order dismissing her complaint with leave to amend in
    1:06cv1260 AWI LJO.  There, the court stated, "This court is concerned that plaintiff has brought this action in
28  absence of good faith and attempts to vex defendants because they investigated plaintiff for fraud.  Such attempt to
    vex defendants provides further grounds to dismiss plaintiff's complaint."

petitioner to articulate his claims pro se in light of the complexity of the legal issues involved. See, Wilborn v. Escalderon, 789 F. 2d 1331.   Without a reasonable method of securing and compensating counsel, this court will seek volunteer counsel only in the most serious and exceptional cases.  In this case, the court has determined that there are no cognizable claims contained in Plaintiffs' complaint and the Motion to Appoint Counsel is DENIED.

## ORDER AND RECOMMENDATION

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Appointment of Counsel is DENIED.  Further, the court HEREBY RECOMMENDS that this action be DISMISSED WITHOUT LEAVE TO AMEND.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated : December 8,  2008**            **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE